[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
Presently before the court is the plaintiffs' motion for partial summary judgment, and the defendant's objection and cross-motion for summary judgment. The plaintiffs are Constantinos Sotirio, Ilan Kinori, Anthony Schwartz, and Bill Gouveia, parties involved in a sale of property known as 31 Hillside Avenue, Milford, Connecticut (the property). The defendant is Washington Mutual Bank (Washington), the holder of a mortgage on the property at the time of the sale. This case arises out of the plaintiffs' attempt to recover damages for Washington's failure to issue a release of a mortgage as required by § 49-8 (c)
The facts, most of which have been stipulated to, do not appear to be in dispute.[1] In August 1995, Sotirio, the property owner at the time, granted Great Western Bank a mortgage on the property. The mortgage was promptly recorded on the land records of the City of Milford in Volume 2136, at page 193. Washington subsequently acquired the mortgage through a merger with Great Western Bank.
On March 24, 1999, Sotirio closed on a sale of the property by warranty deed to Kinori. Sotirio had not paid of if the mortgage by the closing date. Schwartz, Sotirio's attorney, therefore agreed to indemnity both Kinori and his attorney, Gouveia, against any claim related to Washington's failure to release the mortgage. Gouveia, as an agent for First American Title Insurance Company, also issued a title insurance policy to Kinori.
On March 29, 1999, Schwartz sent Washington a check for $134,968.91, the payoff amount on the mortgage. Included with the check was a cover letter requesting that Washington issue a release of the mortgage. Subsequently, when Kinori entered into a contract to sell the property in June 2001, he discovered that a release had never been recorded on the Milford Land Records. Washington, in response to further requests to issue a release, finally did so on July 9, 2001. CT Page 13562
Based on these facts, the plaintiffs filed an eight count complaint on December 4, 2001. Counts one, three, five, and seven seek damages for Washington's alleged failure to release the mortgage in the period prescribed by General Statutes § 49-8 (c). Counts two, four, six, and eight seek damages for Washington's alleged violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Counts one and two are filed by Sotirio, counts three and four by Kinori, counts five and six by Schwartz, and counts seven and eight by Gouveia.
On December 17, 2001, each plaintiff filed a formal offer of judgment in the amount of $4,950.00. Ten days later, on December 27, 2001, Washington accepted the offer of judgment filed by Sotirio, but did not accept the offers made by the remaining plaintiffs. Judgment entered as to counts one and two on January 7, 2002.
On March 1, 2002, the defendant filed an answer and two special defenses as to the remaining six counts. The first special defense alleges that § 49-8 (c) expressly limits damages for the failure to release a mortgage to $5,000, thereby releasing Washington from any liability to the remaining plaintiffs. The second special defense alleges that none of the remaining plaintiffs are "aggrieved" under § 49-8
(c).
The remaining plaintiffs now move for partial summary judgment on counts three, five, and seven. They have filed a corresponding memorandum in support of their motion. In response, Washington has filed an objection to the motion of the remaining plaintiffs and a cross motion for summary judgment. Washington has also filed a corresponding memorandum of law in support of its objection and its cross motion for summary judgment. The remaining plaintiffs have answered by filing a response to Washington's.
"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Buell Industries,Inc. v. Greater New York Mutual Ins. Co., 259 Conn. 527, 550,791 A.2d 489 (2002). "[A]lthough the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together CT Page 13563 with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Tnternal quotation marks omitted.) Id.
The remaining plaintiffs move on the ground that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Specifically, the plaintiffs argue that they each are "aggrieved" under § 49-8 (c). Kinori argues that he is aggrieved by virtue of being the purchaser of the property. Schwartz argues that he is aggrieved because he agreed to indemnify Kinori and Gouveia against any claims related to Washington's failure to release the mortgage. Finally, Gouveia argues that he is aggrieved because he issued a title insurance policy to Kinori.
Washington, however, also moves on the ground that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Washington argues that the remaining plaintiffs are not "aggrieved" under the § 49-8 (c). Specifically, Washington argues that the only person that can be aggrieved under the statute is Sotirio, the mortgagor.
The parties in this case essentially ask the court to interpret §49-8 (c). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, [the court seeks] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, [the court looks] to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) Laflamme v. Dallessio, 261 Conn. 247, 525-53
(2002).
The court begins with the wording of General Statutes § 49-8 (c), which provides: "The mortgagee or plaintiff or the plaintiff's attorney, as the case may be, shall execute and deliver a release within sixty days from the date a written request for a release of such encumbrance . . . was received by such mortgagee, plaintiff or plaintiff's attorney from a private messenger or courier service or through any means of communication, including electronic communication, reasonably calculated to give the person the written request or a copy of it. The mortgagee or CT Page 13564 plaintiff shall be liable for damages to any person aggrieved at the rate of two hundred dollars for each week after the expiration of such sixty days up to a maximum of five thousand dollars or in an amount equal to the loss sustained by such aggrieved person as a result of the failure of the mortgagee or plaintiff or the plaintiff's attorney to execute and deliver a release, whichever is greater, plus costs and reasonable attorney's fees."
Because the statute does not provide any definition as to who would qualify as "aggrieved" and because there is no case law addressing this issue, the court turns to the legislative history of the statute for guidance. In 1995, Milton Widem, Vice Chairman of the Law Revision Commission, testified in front of the joint judiciary committee on a proposed amendment to § 49-8. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1995 Sess. pp. 1670-76. In his testimony, Widem explained that § 49-8 attempts to resolve the situation where "the mortgagor seeks to secure a release of that mortgage . . . to refinance his property or to sell the property . . .," but cannot because the mortgagee does not issue a release of the mortgage in a timely fashion. Conn. Joint Standing Committee Hearings, supra, pp. 1671-73. It is therefore submitted that § 49-8, when applied in the context of mortgages, seeks to protect mortgagors who cannot sell their property or refinance their mortgages by virtue of not receiving a release of a mortgage. The remaining plaintiffs are not "aggrieved" under §49-8 (c) as none are mortgagors. Although Sotirio was still able to sell his property to Kinori, he is the only mortgagor, and therefore, the only party that may be "aggrieved" under § 49-8 (c).[2]
CT Page 13565
The remaining plaintiffs also argue that they are each entitled to damages in the amount of $5,000. Although they have not suffered any actual damages, the remaining plaintiffs contend that § 49-8 (c) allows them each to collect damages at the rate of $200 per week up to a maximum of $5,000. The court need not address this argument as none of the plaintiffs are "aggrieved" under § 49-8 (c).
The defendants' motion for summary judgment is granted, and the plaintiffs' cross-motion for summary judgment is denied.
The Court
 By ____________________ Curran, J.