[Cite as *Robinson v. Larchmont E. Apts., Inc.*, 2014-Ohio-3517.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Vicky Robinson

Appellee

v.

Larchmont East Apartments, Inc. d.b.a.
Kingston Court Apartments, et al.

Appellees

Court of Appeals No. L-12-1323

Trial Court No. CI0201102593

**DECISION AND JUDGMENT**

Decided: August 15, 2014

* * * * *`

Vicky Robinson, pro se.

Thomas S. Mazanec and Frank H. Scialdone, for appellee, Larchmont East
Apartments, Inc., d/b/a Kingston Court Apartments.

Alexander M. Andrews and Alyson Terrell, for appellee, SEA, Ltd.

D. John Travis and Colleen A. Mountcastle, for appellee, Chubb Custom
Insurance Company.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas that granted the summary judgment motions of defendants-appellees, Larchmont

East Apartments, Inc. d.b.a. Kingston Court Apartments ("Larchmont"), Chubb Custom Insurance Company ("Chubb"), and SEA, Ltd. ("SEA"), denied the summary judgment motion of pro se plaintiff-appellant, Vicky Robinson, and dismissed the case.

{¶ 2} The undisputed facts of this case are as follows. On April 22, 2006, there was a fire in an apartment building that was owned by Larchmont and in which Robinson resided as a tenant ("Building 3155"). On April 11, 2008, Robinson filed a complaint against Larchmont regarding injuries she claimed to have sustained as a result of the fire. Robinson dismissed that case without prejudice, and on April 1, 2011, she refiled her action against Larchmont and John Doe. Thereafter, on August 12, 2011, Robinson filed an amended complaint against Larchmont, John Doe, SEA and Chubb, and on August 23, 2011, she filed her second amended complaint against those same defendants. Count One of the complaint alleged that Larchmont and/or John Doe owed a duty to Robinson and others pursuant to R.C. 5321.04, to maintain the premises in a reasonably safe and proper condition and that their breach of those duties, particularly their failure to maintain the building's wiring, directly and proximately caused Robinson serious, disabling and permanent injuries. Count Two alleged that John Doe negligently installed, maintained or otherwise performed work on the wiring in the building in which Robinson was injured and was therefore responsible for those injuries. Count Three alleged that Chubb sold Larchmont property insurance that was in effect on April 22, 2006, that following the fire, Chubb hired SEA, an engineering company, to investigate its cause, and that in its investigation of the fire, SEA and its employee deliberately withheld critical

2.

information regarding his analysis of critical evidence and withheld or destroyed critical evidence. Count Three further alleged that Chubb ordered SEA to destroy an electrical panel box six months after Robinson filed her original complaint against Larchmont, that Chubb and SEA conspired to destroy the electrical panel box and the analysis reports of SEA's employee, (while knowing that they were critical evidence in Robinson's pending litigation), that the actions of the defendants were deliberate and willful, and that such actions damaged Robinson. All three defendants filed answers denying liability.

{¶ 3} During the proceedings below, a discovery dispute arose regarding subpoenas issued by Robinson to Larry Snyder and Tom Whitby, former employees of SEA who acted as experts in investigating the origin and cause of the fire. Robinson had subpoenaed Snyder and Whitby to appear for depositions in Perrysburg, Ohio, on November 22, 2011. A dispute, however, arose regarding expert witness fees and the depositions' location. Accordingly, SEA filed a motion for a protective order and/or to quash the subpoenas and sought an order from the trial court that Robinson be required to pay the deponents reasonable compensation of $195 per hour for their expert witness testimony, including travel time should the depositions be held outside of their respective counties of residence. The lower court held a hearing on the motion, and on December 20, 2011, issued a judgment entry granting the motion in part. The court ordered that Robinson could depose Snyder and Whitby with regard to Count Three of her second amended complaint without paying expert witness fees. The court further ordered,

3.

however, that if Robinson sought to inquire of these witnesses their opinions as to the cause and origin of the fire, she must reimburse them at the rate of $195 per hour.

{¶ 4} On January 23, 2012, Robinson's counsel deposed Snyder and Whitby in Toledo, Ohio. Prior to those depositions, however, the parties continued to argue over Robinson's obligation to pay for the witnesses' travel time. During the depositions, and despite the lower court's December 20, 2011 order, Robinson's counsel questioned Snyder and Whitby extensively as to their opinions regarding the cause and origin of the fire.

{¶ 5} SEA, Chubb, Larchmont and Robinson all filed motions for summary judgment in the court below. In addition, SEA filed a motion to compel payment of expert witness fees pursuant to the court's December 20, 2011 order, and an order for sanctions for Robinson's disregard and contempt of that order.

{¶ 6} On October 12, 2012, the lower court issued an opinion and judgment entry ruling on all of the summary judgment motions and the motion to compel. The court granted the summary judgment motions of SEA, Chubb and Larchmont, and denied the summary judgment motion of Robinson. In addition, the court granted SEA's motion to compel the payment of expert witness fees and ordered Robinson to pay SEA the sum of $2,788.59 within 30 days of the date of the opinion, but denied SEA's motion for sanctions. Finally, the court denied 15 other outstanding motions as moot.

{¶ 7} Appellant now challenges the lower court's judgment on appeal. Acting pro se, appellant has set forth seven assignments of error in her brief. As articulated by

4.

appellant, however, those assignments of error are unintelligible. We will therefore clarify them here as best we can. Several of the assignments of error have been combined for purposes of this appeal.

1. The lower court erred in granting appellees summary judgment [Appellant's First, Second and Third Assignments of Error.]

2. The lower court erred in failing to rule on the outstanding motions until after ruling on the summary judgment motions [Appellant's Fourth and Sixth Assignments of Error.]

3. The lower court erred in granting SEA's motion to compel the payment of expert witness fees [Appellant's Fifth Assignment of Error.]

4. Appellant was denied her right to the effective assistance of counsel [Appellant's Seventh Assignment of Error].

{¶ 8} We further note that appellant has attached to her brief numerous documents that were not filed in the court below and are not part of the record on appeal. It is well settled that an appellate court "cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Accordingly, anything that appellant has submitted that goes beyond the trial court record will be disregarded.

{¶ 9} Appellant first challenges the lower court's order granting summary judgment to all three appellees. Appellate review of a trial court's grant of summary

5.

judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993). Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt,* 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996). However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

{¶ 10} The lower court granted summary judgment to all three appellees and on all three counts in the complaint. Count one asserted a claim against Larchmont for negligence and alleged violation of duties imposed upon landlords by R.C. 5321.04.

{¶ 11} To overcome a properly supported summary judgment motion on a claim of negligence, a plaintiff must show a duty and that a breach of that duty is the direct and

6.

proximate cause of an injury. *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998). R.C. 5321.04(A) imposes statutory duties on a landlord who is a party to a rental agreement to, among other things:

(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;

(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

* * *

(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by the landlord[.]

{¶ 12} A landlord's violation of the duties set forth in R.C. 5321.04(A) constitutes negligence per se. *Sikora v. Wenzel*, 88 Ohio St.3d 493, 727 N.E.2d 1277 (2000), syllabus; *see also Shroades v. Rental Homes, Inc.*, 68 Ohio St.2d 20, 25, 427 N.E.2d 774 (1981). "Negligence *per se,* however, is not equivalent to 'a finding of liability *per se* because the plaintiff will also have to prove proximate cause and damages.'" *Sikora* at 496, quoting *Chambers, supra* at 565. Moreover, a landlord's lack of notice of the purported defect in the premises constitutes an excuse from liability for a violation of R.C. 5321.04(A)(1) and (2). *Sikora* at 498. That is, "a landlord will be excused from liability under either section if he neither knew nor should have known of the factual

7.

circumstances that caused the violation." *Id.* at syllabus. Constructive notice of an unsafe condition may be demonstrated by showing that the landlord knows or should have known "'of any occasion or necessity for action in compliance with the legislation or regulation.'" *Id*. at 497.

{¶ 13} In support of its motion for summary judgment, Larchmont submitted evidence in the form of the expert testimony of Thomas Whitby, an electrical engineer. Whitby opined that the fire was not electrical in nature and was not caused by a fault in the building's electrical system. In contrast, Robinson submitted evidence in the form of the expert testimony of Larry Stalter, who opined that the fire originated in the utility room on the second floor of the apartment building and that it was caused by defective wiring in a panel box that was located behind a wall. The lower court properly recognized that given the contrasting evidence on the issue of the cause and origin of the fire, it must be assumed for purposes of summary judgment that the fire was caused by defective wiring in a panel box that was located behind a wall.

{¶ 14} In her complaint, appellant alleged that Larchmont failed to inspect, repair and maintain the building's wiring system so as to keep it in a reasonably safe and proper condition. Fitness and habitability, the issues raised by claims made pursuant to R.C. 5321.04(A)(2), encompass "such defects as lack of water or heat, faulty wiring, or vermin infestation." *Parks v. Menyhart Plumbing and Heating Supply Co.,Inc.*, 8th Dist. Cuyahoga No. 75424, 1999 WL 1129591, *4 (Dec. 9, 1999).

8.

{¶ 15} Larchmont asserts that because it had no actual or constructive notice of the alleged faulty wiring, the lower court properly granted it summary judgment. Appellant countered Larchmont's summary judgment motion with evidence regarding a 2003 fire in an adjacent building, the deposition testimony of Joe Goodell, one of the owners of Larchmont, and her own affidavit. Appellant asserted that based on this evidence, Larchmont knew or should have known that the wiring in Building 3155 was faulty.

{¶ 16} In 2003, Building 3153, which is adjacent to and shares a firewall with Building 3155, sustained a fire. Appellant claims that following that fire, repairs were made by electricians who were not licensed to work on commercial structures. There is no evidence in the record, however, that the repairs made to the 3153 building following the 2003 fire were in any way connected to the fire in the instant case. First, the 2003 fire was ignited by fireworks, and it was the fire that damaged the electrical system in that building. The electrical system did not cause the fire. Second, following repairs to the damaged structure, the 3153 building was thoroughly inspected by the city of Oregon Building Inspection Department, which then issued an occupancy permit. Appellant did not submit any evidence counter to these facts to support her claim that Larchmont violated its duty under R.C. 5321.04(A)(2).

{¶ 17} Appellant's reliance on the deposition testimony of Joe Goodell, one of the owners of the Larchmont apartment complex, and on her own affidavit is further misplaced. Goodell testified that when he purchased the apartment complex in 1993, he personally inspected the property's electrical systems to make sure that the fuses were up

9.

to date, that there was no aluminum wiring going into the fuse boxes, and that the property had 100 amp service. Goodell admitted that he is not an electrician, but based on his inspection, he did not believe that the electrical system needed to be updated to comply with any electrical codes. Subsequently, when electrical problems were discovered in Buildings 3049 and 3153, he hired a contractor to make repairs. In her affidavit, appellant stated that when she moved into the apartment complex in July 2004, she got electrical shocks from the garbage disposal switch in her apartment. Because of the shock problem, she always used a dry towel when turning on the disposal. Appellant stated that she reported the problem to Jackie June, the manager of the complex, but the problem was not fixed.

{¶ 18} Appellant asserts that given this evidence, Larchmont was on notice that there were electrical problems in her building and that should have been investigated and corrected.

{¶ 19} In *Abbott v. Haight Properties, Inc.*, 6th Dist. Lucas No. L-98-1413, 2000 WL 491731 (Apr. 29, 2000), we were faced with a similar factual scenario. In that case, a fire was caused by an electrical arc in wiring that was stapled between two-by-fours and sound barrier sheeting inside a wall that divided an apartment and a utility room. The plaintiff alleged that the defendant, who managed the rental property, was negligent in failing to evaluate and repair electrical deficiencies in the building. The plaintiff further alleged that the defendant had knowledge of electrical problems prior to the fire because visitors to the building had witnessed exposed electrical wiring sticking out of light

10.

fixtures and electrical outlets.  The trial court granted the defendant summary judgment after concluding that the staple fault was not one that a landlord could have noticed in the exercise of reasonable care.  Upon review, we agreed and stated:

> In order to inspect the electrical wiring in this case, appellee would have to tear open the wall and the sound board, a requirement that we find nonsensical in both this and similar cases.  Moreover, the evidence offered establishes that this defect was a condition that existed from the time that these apartments were constructed.  In other words, it was not a defect that developed due to a lack of preventative action.  Thus, we conclude the defect in this case is a repair defect for the purposes of determining whether appellee had to have actual or constructive notice in order to have violated R.C. 5321.04(A).  We find that they did not have such notice.  *Id.* at *5.

{¶ 20} Consistent with our holding in *Abbott,* we find in this case that one cannot infer a defect in wiring inside the wall of the utility room from the fact that appellant received a shock from her garbage disposal switch.  That is, it did not provide Larchmont with actual or constructive notice that there may be faulty wiring in the building.  This case is substantially different from cases cited by appellant in the proceedings below.  *See McKenzie v. Marlowe,* 8th Dist. Cuyahoga No. 70714, 1996 WL 715502 (Dec. 12, 1996), *Wilhelm v. Heritage Mgt. Co.*, 12th Dist. Butler No. CA97-07-144, 1998 WL 24342 (Jan. 26, 1998), *Blakley v. Riley*, 10th Dist. Franklin No. 91AP-597, 1992 WL 1163 (Jan. 7, 1992).  Finding that appellant has presented no evidence from which reasonable minds

11.

could conclude that Larchmont had actual or constructive notice of the electrical defect that allegedly caused the fire, we must conclude that Larchmont was entitled to summary judgment on appellant's claims against it.

{¶ 21} Appellant further challenges the lower court's grant of summary judgment to Chubb and SEA on her claims of spoliation and civil conspiracy, the third count of appellant's complaint.

{¶ 22} In Ohio, spoliation is recognized as an independent cause of action. *Mitchell v. Norwalk Area Health Serv.*, 6th Dist. Huron No. H-05-002, 2005-Ohio-5261, ¶ 146. A party establishes a spoliation or destruction of evidence claim where there is:

> (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts[.] *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993).

{¶ 23} In the proceedings below, appellant asserted that SEA, at the direction of Chubb, destroyed the electrical panel box that was the source of the fire that injured appellant, and that those defendants conspired to disrupt appellant's pending litigation over the fire.

{¶ 24} It is undisputed that in April 2006, shortly after the fire, Chubb hired SEA to investigate the fire at issue, and that as part of its investigation, SEA's fire investigator,

12.

Larry Snyder, removed the electrical panel box and associated wiring from the fire scene for further analysis. On April 11, 2008, appellant filed a complaint against Larchmont in the Lucas County Court of Common Pleas. She dismissed that case without prejudice on May 28, 2012. It is undisputed that Chubb and SEA had no knowledge of this action. It is noteworthy that the loss description on Chubb's property loss notice form expressly states "Fire in 24 unit apartment building with no human injury." SEA held onto the electrical panel box and wiring pending further instructions from Chubb. Having received no further instructions, SEA sent Chubb a form letter in September 2008 requesting instructions as to the disposition of the retained items. Chubb responded on October 15, 2008, instructing SEA to dispose of the items. Patricia Tyrone, the senior claims examiner for Chubb at that time testified that once Chubb determined that there was no third party responsible for the fire, subrogation was not an issue and Chubb no longer needed to retain the items.

{¶ 25} In support of their summary judgment motions, Chubb and SEA submitted the affidavit of Glenn Baker, the CEO of SEA, and two affidavits of James Lenz, the vice president of Chubb. These affidavits establish that SEA and Chubb had no knowledge of existing or probable litigation involving appellant when the electric panel box and wiring were destroyed. In response to that evidence, appellant did not submit any evidence from which reasonable minds could conclude that an issue of fact existed on the claims of spoliation and conspiracy. Moreover, upon review of appellant's claims against Larchmont, the trial court accepted for purposes of summary judgment that the fire was

13.

caused by defective wiring in a panel box behind a wall in the utility room. Regardless of that assumption, appellant's claim against Larchmont could not be sustained. Accordingly, appellant could not demonstrate that the loss of the electric panel box and wiring disrupted her case. The lower court did not err in granting SEA and Chubb summary judgment on appellant's claims against them.

{¶ 26} The first, second and third assignments of error are not well-taken.

{¶ 27} In her fifth assignment of error, appellant asserts that the lower court erred in granting SEA's motion to compel the payment of expert witness fees.

{¶ 28} In its order on appeal, the lower court, in addition to granting appellees summary judgment, ordered appellant to pay reasonable compensation to expert witnesses Larry Snyder and Tom Whitby, pursuant to Civ.R. 26(B) and Civ.R. 45(C)(5). A trial court's judgment ordering a party to pay an expert witnesses' fee will not be reversed on appeal absent an abuse of discretion. *Vance v. Marion Gen. Hosp.*, 165 Ohio App.3d 615, 2006-Ohio-146, 847 N.E.2d 1229, ¶ 7 (3d Dist.) An abuse of discretion is more than an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). The term connotes that a trial court's judgment was unreasonable, arbitrary or unconscionable. *Id.*

{¶ 29} Snyder and Whitby are former employees of SEA, who investigated the fire at issue. Snyder retired from SEA in February 2008 and Whitby left SEA in July 2007. As fire investigators for SEA, both Snyder and Whitby had extensive knowledge of SEA's business practices in documenting fire investigations. Accordingly, in its

14.

December 20, 2011 judgment, the lower court ordered that appellant could depose the two men on the issue of the spoliation claim without paying an expert witness fee. The court was very clear, however, in stressing that if appellant inquired of these witnesses their opinions as to the cause and origin of the fire, that is, if appellant sought expert opinions from these witnesses, she would be required to pay the expert witness fees of $195 per hour.

{¶ 30} The depositions were held on January 23, 2012. At appellant's insistence, they were held in Toledo, Ohio, which required both men to incur travel expenses. During the depositions, both men were questioned extensively as to their opinions of the cause and origin of the fire.

{¶ 31} Civ.R. 26(B)(5) provides in relevant part:

(a) Subject to the provisions of subdivision (B)(5)(b) of this rule and Rule 35(B), a party may discover facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or preparation for trial only upon a showing that the party seeking discovery is unable without undue hardship to obtain facts and opinions on the same subject by other means or upon a showing of other exceptional circumstances indicating that denial of discovery would cause manifest injustice.

* * *

(e) The court may require that the party seeking discovery under division (B)(5)(b) of this rule pay the expert a reasonable fee for time spent in responding to discovery, and, with respect to discovery permitted under division (B)(5)(a) of this rule, may require a party to pay another party a fair portion of the fees and expenses incurred by the latter party in obtaining facts and opinions from the expert.

{¶ 32} Civ.R. 26(B)(5)(e) gives courts the power "to control discovery under unfair circumstances where an expert may be paid by one party and deposed by the other party, who would garner the benefit of information without paying for it." *Vance,* at ¶ 13, citing *Siegel v. Birnbaum*, 8th Dist. Cuyahoga Nos. 69105, 69059, 1997 WL 72143, at *11 (Feb. 20, 1997). Snyder and Whitby were identified by SEA as its expert witnesses. Appellant was duly warned that if she inquired of their opinions as to the cause and origin of the fire she would be required to pay expert witness fees. In addition, appellant insisted that the two men travel to Toledo to be deposed, thereby adding travel time to their expenses. We fail to see how the trial court abused its discretion by ordering appellant to pay the fees under these circumstances. The fifth assignment of error is not well-taken.

{¶ 33} In her seventh assignment of error, appellant asserts that she was denied her right to the effective assistance of counsel in the proceedings below.

{¶ 34} In *Keenan v. Parker*, 23 Fed.Appx. 386-387 (6th Cir.2001), the court aptly stated:

16.

It is well-settled that there is no constitutional or statutory right to effective assistance of counsel in a civil case. *See, e.g., Friedman v. Arizona*, 912 F.2d 328, 333 (9th Cir.1990); *Glick v. Henderson*, 855 F.2d 536, 541 (8th Cir.1988). Thus litigants in a civil proceeding may not attack an adverse judgment on the grounds of ineffective assistance of trial counsel. *Friedman*, 912 F.2d at 333. Instead, the appropriate remedy is a malpractice action against the attorney. *Glick*, 855 F.2d at 541.

{¶ 35} Accordingly, appellant's seventh assignment of error is not well-taken.

{¶ 36} Finally, in her fourth and sixth assignments of error, appellant asserts that the lower court erred in failing to rule on 20[1] outstanding motions until after ruling on the motions for summary judgment. She further challenges the trial judge's overall administration of the case.

{¶ 37} In its judgment on appeal, the lower court denied the following motions after granting appellees summary judgment and granting SEA's motion to compel:

1. SEA's motion for sanctions against Ms. Robinson for failure to comply with the January 24, 2012 judgment entry, filed March 5, 2012,

2. Ms. Robinson's motion to quash subpoena to plaintiff's expert, filed March 12, 2012,

3. Ms. Robinson's motion to reconsider this Court's Order of March 14, 2012, filed on March 19, 2012,

---

[1]Our review of the record reveals that the court ruled on 15, not 20, outstanding motions following its ruling on the summary judgment motions.

4.  Ms. Robinson's motion for continuance to respond to defendants' motions for summary judgment, filed March 29, 2012,

5.  Ms. Robinson's motion to supplement her motion for summary judgment against Chubb and SEA, filed April 2, 2012,

6.  Ms. Robinson's motion for sanctions against Chubb, filed April 4, 2012,

7.  Chubb's and SEA's motion for extension of time to file its brief in opposition to plaintiff's motion to supplement her motion for summary judgment, filed April 16, 2012,

8.  SEA's motion to strike, motion in limine and motion for sanctions against Michael Portnoy, filed April 26, 2012,

9.  Chubb's motion to strike and motion for sanctions against Ms. Robinson and Michael Portnoy, filed April 30, 2012,

10.  Ms. Robinson's motion for continuance to respond to defendant's motion for summary judgment, filed May 4, 2012,

11.  Ms. Robinson's motion for a hearing on her motion for sanctions and notice of converting her motion for sanctions against Chubb to a motion to compel, filed May 4, 2012,

12.  Ms. Robinson's motion for continuance to respond to SEA's and Chubb's motions for summary judgment, filed May 14, 2012,

13. Larchmont's motion for sanctions against Ms. Robinson, filed May 25, 2012,

14. Ms. Robinson's motion to amend expert witness list, filed May 29, 2012, and

15. Larchmont's motion to strike portions of Ms. Robinson's memorandum in opposition to Larchmont's supplemental motion for sanctions, filed September 10, 2012.

{¶ 38} Although appellant challenges the lower court's delay in ruling on these motions, she does not assert how she was prejudiced by the actual rulings themselves. Indeed, the lower court ruled in favor of appellant on six of the motions. Similarly, her challenge to the trial court's administration of the case is without merit. Other than general claims that the lower court was biased against her, appellant has not specifically identified any place in the record that shows such alleged bias. *See* App.R. 16.

{¶ 39} The fourth and sixth assignments of error are not well-taken.

{¶ 40} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

L-12-1323
Robinson v. Larchmont East
Apartments, Inc. d.b.a. Kingston
Court Apartments, et al.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                      _____
                                                         JUDGE

Arlene Singer, J.


Thomas J. Osowik, J.                        _____
CONCUR.                                               JUDGE


_____
                                                         JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.